MACMILLAN CO. v. JOHNSON, State Superintendent of Public Instruction.

(District Court, E. D. Michigan, S. D. August 27, 1920.)

No. 313.

1. **Schools and school districts ⬥⟶167—Statute regulating sale of school text-books constitutional in part.**

   Pub. Acts Mich. 1919, No. 380, regulating the sale of school text-books, by prohibiting school officers from buying for use of the schools any books except from those listed with the state superintendent of public instruction, and at prices therein fixed, etc., *held* constitutional and valid, except as to section 7, which in broadly making it unlawful for any retail dealer to sell any books so listed at higher prices than those prescribed, without limiting such prohibited sales to school officers, exceeds the power of the state and is void.

2. **Constitutional law ⬥⟶239—Restricting purchase of books by school districts not class legislation.**

   A state statute prohibiting school districts from buying text-books, except from publishers who list their books and prices with the state superintendent of public instruction, and contract with him to furnish books at such prices, *held* not invalid as class legislation.

3. **Constitutional law ⬥⟶295—Publisher not deprived of property without due process by statute restricting right to contract with school districts.**

   A state statute prohibiting school districts from buying text-books, except from lists filed with the superintendent of public instruction at prices therein named, *held* not unconstitutional, as depriving a publisher of property without due process of law, since he is not compelled to sell to such districts.

4. **Constitutional law ⬥⟶92—Publisher of school books has no vested right to contract with districts.**

   A publisher of school text-books has no vested right to contract with public school districts for the sale of its books, and a statute imposing limitations on such sales is constitutional.

5. **Commerce ⬥⟶55—Fixing price to be paid for books by school districts not interference with interstate commerce.**

   A state statute restricting the power of school districts, in purchasing text-books, to such books as are listed with the superintendent of public instruction, and at prices therein fixed, *held* not unconstitutional as to a nonresident publisher, as an attempt to regulate interstate commerce.

6. **Statutes ⬥⟶64(1)—Not invalid because of unconstitutionality of one provision.**

   The unconstitutionality of one provision of a statute does not render it invalid as a whole, where such provision may be stricken out without altering the meaning, purpose, or effect of those remaining.

7. **Schools and school districts ⬥⟶167—Statute authorizing appointment of agents to sell books to pupils at fixed prices valid.**

   A statute authorizing school districts to designate retail dealers as their agents to sell text-books to their pupils, and limiting the price which may be charged therefor, *held* within the power of the state, and valid.

In Equity. Suit by the Macmillan Company against T. E. Johnson, as Superintendent of Public Instruction of the State of Michigan. Decree for complainant in part.

Goodenough, Voorhies & Long, of Detroit, Mich., and Thurman, Hume & Kennedy, of Chicago, Ill., for plaintiff.

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Alex J. Groesbeck, Atty. Gen., of Michigan, and Sheridan F. Master, Asst. Atty. Gen., of Michigan, for defendant

TUTTLE, District Judge. [1] This case involves the constitutionality of the so-called "School Text-Book Act" of the State of Michigan, being Act No. 380 of the Michigan Public Acts of 1919, the title of which, so far as it is material here, is:

"An act to regulate the sale, exchange, and use of school text-books within this state."

The sections of this act material to the present controversy are as follows:

"Section 1. No board of education or school official in any school district in this state shall purchase, procure by exchange, adopt, or permit to be used in the schools of any such district any school text-book which is not listed with the superintendent of public instruction as hereinafter provided. Any person, firm or corporation desiring to offer school text-books for adoption, sale, or exchange in the state of Michigan shall file with the superintendent of public instruction copies of all such text-books together with a sworn statement of the usual list price, the lowest net wholesale price, and the lowest exchange price at which said book is sold or exchanged for an old book on the same subject of like grade and kind but of a different series. No text-book shall be listed by the superintendent of public instruction unless the person, firm, or corporation offering the same shall enter into a written contract with the superintendent of public instruction, acting on behalf of the state of Michigan and the school districts thereof, which said contract shall embrace the following terms and conditions:

"(a) That said person, firm, or corporation will furnish any of the books listed in said statement, and in any other statement subsequently filed by him, at any time within a period of one year after such filing, to any such district or any school corporation in the state of Michigan at the lowest price contained in said statement, and that said prices shall be maintained uniformly through the state.

"(b) That the prices, as set forth in said statement, shall be automatically reduced in the state of Michigan whenever reductions are made elsewhere in the United States, after January 1, 1918, so that at no time shall any book so filed and listed be sold or offered for sale by such person, firm, or corporation in the state of Michigan at higher net prices than are received for such book elsewhere in the United States, and regardless of whether such book is so sold or offered for sale elsewhere in accordance with the terms of a contract, or otherwise. * * *

"(f) That the superintendent of public instruction may, if he ascertains at any time that any person, firm, or corporation listing books with him as herein provided is selling or offering for sale any such book or books elsewhere in the United States at lower prices than those for which said book or books are sold or offered for sale in the state of Michigan, cancel all filings on the part of any such person, firm, or corporation, and remove from the list hereafter referred to all books sold or offered for sale by such person, firm, or corporation: Provided, that nothing in this act shall be construed to disturb contracts entered into with school boards previous to January 1st, 1919. * * *

"Sec. 4. The superintendent of public instruction shall annually, and at such other time or times as he may deem expedient, publish and send to each board of education within the state a copy of all lists of school text-books then in force in his office showing the prices at which such books may be purchased. Any list so issued shall remain effective until superseded or cancelled. No school text-book shall be purchased, adopted, or used for or in the schools of any school district within the state unless the same is contained

in the list so put forth by the superintendent of public instruction and in effect at the time of the purchase, adoption, or exchange. In no case shall any filing by any person, firm, or corporation become effective until the publication of a list by the superintendent of public instruction. * * *

"Sec. 7. It shall be unlawful for any retail dealer in text-books to sell any books listed with the superintendent of public instruction as hereinbefore provided at a price to exceed fifteen per cent. advance on the net wholesale price as so listed, and the cost of transportation. * * *

"Sec. 9. School districts are hereby authorized to purchase text-books from the publishers at the prices listed with the superintendent of public instruction as hereinbefore provided and to designate a retail dealer or dealers to act as the agent of the district in selling text-books to pupils. The said dealer or dealers shall at stated times make settlement with the district for such books as have been sold up to the stated time. Said dealer or dealers shall not sell text-books at a price which shall exceed a ten per cent. advance on the net wholesale price as listed with the superintendent of public instruction. * * *

"Sec. 11. Any school official or member of any school board or other person violating or knowingly permitting or consenting to any violation of the provisions of this act shall be deemed to be guilty of a misdemeanor and on conviction shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding three months; or both such fine and imprisonment in the discretion of the court."

Plaintiff is a New York corporation, engaged in publishing in New York, and selling in, and shipping to, Michigan and other states, to school boards, book dealers, and the general public, school text-books and other books. It files this bill against the defendant, as superintendent of public instruction of Michigan, to restrain him from taking any steps to enforce the statute just mentioned, which it alleges is unconstitutional on grounds which may be conveniently grouped as follows:

(1) That the statute prevents plaintiff from selling in, or shipping to, Michigan its schoolbooks, except at prices which would cause it such tremendous loss that it would not undertake to do so, and that therefore the enforcement of such act would deprive plaintiff of its property without due process of law, in contravention of the Fourteenth Amendment;

(2) That the act attempts to regulate interstate commerce, by regulating the prices of books shipped into Michigan in such commerce, and is for that reason unconstitutional; and

(3) That the statute discriminates in favor of dealers in schoolbooks for use in the public schools of Michigan against various other dealers in books, and that therefore it denies plaintiff the equal protection of the laws.

[2] Plaintiff does not refer in any of its briefs to the contention urged in its bill to the effect that this statute is unconstitutional as class legislation, and has apparently waived such contention. However this may be, it is clear that the only classification involved in the act is purely incidental to the purposes of the statute and necessary to the enforcement thereof, is reasonable in nature, and of uniform and impartial application to all members of the same class. That the act is not open to any objection based upon its alleged arbitrary discrimination is too plain for further discussion.

Obviously, it was the intent and purpose of the Michigan Legislature, in enacting this law, to regulate the method of the selection and

purchase, by the public school authorities of the state, of the text-books to be used in its public schools. This intent and purpose, as well as the method thus prescribed by the statute, are shown by the first sentence thereof, providing that—

"No board of education, or school official in any school district in this state shall purchase, procure, buy, exchange, adopt, or permit to be used in the schools of any such district any school text-book which is not listed with the superintendent of public instruction as hereinafter provided."

[3] The act in question fixes and announces the only terms and conditions on which the state is willing to deal with persons desiring to sell schoolbooks to the authorities in charge of its public schools, for use therein; but no attempt is made to compel any one to so deal with these public authorities. It was proper for the Legislature to prescribe such conditions and to require that the school officials should comply with the regulations, inasmuch as the general power of control of the public schools of this state is vested in the Legislature. Mac-Queen v. Port Huron, 194 Mich. 328, 160 N. W. 627.

[4] Plaintiff is not compelled to sell its books to the school authorities of Michigan, and it has no vested right to make any contract of sale with such authorities without the consent of the authorities representing the state. It is therefore in no position to complain of the terms imposed by the state upon those desiring to deal with it in respect to the sale of such books, or to question the right of the state to fix the conditions upon which it will purchase text-books to be used in its public schools. Polzin v. Rand, McNally & Co., 250 Ill. 561, 95 N. E. 623, Ann. Cas. 1912B, 471. Assuming, therefore, that in order to comply with the conditions thus attached to the purchase and sale of school text-books by the school officials from the plaintiff, it would be necessary for the latter to sustain financial loss, and that therefore it would not or could not undertake to do so, I fail to see wherein the plaintiff is deprived of any right without due process of law, or in contravention of any of the provisions of the federal Constitution. Waugh v. Board of Trustees of University of Mississippi, 237 U. S. 589, 35 Sup. Ct. 720, 59 L. Ed. 1131.

[5] The foregoing considerations are applicable also to the contention of plaintiff that this statute is an illegal attempt to regulate interstate commerce. Plaintiff has no vested right, without the consent of the state, to sell and ship its books to the school officials of Michigan in interstate commerce. This situation is controlled, not by the question of place of residence or the law applicable to sales in interstate commerce, but depends on the old, familiar rule that a sale or contract cannot be made without the consent and agreement of both of the contracting parties.

There is a sentence in the first section of this statute which, standing alone, might seem to go beyond the purpose and proper scope of the statute, and, if so construed, to be invalid. It will be noted that the second sentence of section 1 provides as follows:

"Any person, firm or corporation desiring to offer school text-books for adoption, sale, or exchange in the state of Michigan shall file with the superintendent of public instruction copies of all such text-books, together with a

sworn statement of the usual list price, the lowest net wholesale price, and the lowest exchange price at which said book is sold or exchanged for an old book on the same subject of like grade and kind but of a different series."

This sentence, however, must be read and construed in connection with its context, the preceding, and the following, sentence, these three sentences comprising the entire section. When so construed and considered it is apparent that the provision requiring the filing of this sworn satement with the superintendent of public instruction was intended, and must be interpreted, to apply only to persons desiring to sell text-books to the public school officials referred to in the preceding sentence, and that the filing of such statement, with copies of such text-books, is merely a step in the listing provided for by said first sentence as a prerequisite to the sale to such officials and therein required to be made "as hereinafter provided." Being so limited and thus construed, the provision just quoted is not open to the objection urged against it and the latter is overruled.

Section 7 of the act is as follows:

"It shall be unlawful for any retail dealer in text-books to sell any books listed with the superintendent of public instruction as hereinbefore provided at a price to exceed fifteen per cent. advance on the net wholesale price as so listed, and the cost of transportation."

The language of this whole section is so broad as to prohibit all sales of the school text-books mentioned without complying with the provisions of the act, whether the sale be to school officials or to the general public, and whether or not the dealer be an agent of a school district. This language has no proper relation to the object and subject-matter of the statute as a whole or to the source of the power of the Legislature to enact it. This section must be construed according to its plain terms, and, so construed, is an unwarranted interference with freedom of contract and with the right to engage in the private business of bookselling at retail, and as the extent of the sales of plaintiff to retail dealers depends on the right of the latter to resell, the effect of such section would be to deprive the plaintiff of its property without due process of law. Section 7 is therefore unconstitutional and void.

[6] As, however, this provision is distinct and independent of the other portions of the statute, and readily separable therefrom without affecting the true meaning, purpose, or effect thereof, its invalidity does not render the balance of the act unconstitutional or void. Brazee v. People, 241 U. S. 340, 36 Sup. Ct. 561, 60 L. Ed. 1034, Ann. Cas. 1917C, 522; United States v. Stephens (D. C.) 245 Fed. 956; Mathias v. Cramer, 73 Mich. 5, 40 N. W. 926.

[7] Section 9, authorizing school districts to designate retail dealers to act as their agents in selling text-books to pupils, and providing that such dealers shall not sell text-books at a price in excess of a 10 per cent. advance on the net wholesale price as listed with the superintendent of public instruction, stands upon a different basis than the provision just considered, and is a proper and lawful exercise of the power of the state to prescribe the terms and conditions on which its school officials may, if they desire, appoint agents of their own

selection. This is merely another application of the general power, on the existence of which the validity of this statute is based.

A decree will be entered declaring section 7 of the statute involved void, and all other portions of such statute valid, and granting and denying the relief prayed accordingly.