CONNERLY *v.* STEPHENSON.

Opinion delivered May 26, 1930.

*William West*, for appellant.

*W. W. Grubbs*, for appellee.

HUMPHREYS, J.   The sole issue presented by this appeal for determination is whether the notice given by the mayor, pursuant to an ordinance of the city of Eudora calling a special election on April 8, 1930, to vote on an $8,000 bond issue for the purpose of constructing a public hall in said town, meets the requirement for such notices provided in Amendment number 16 to the Constitution of the State.

No newspaper was printed within the corporate limits of Eudora, so the notice in question was inserted in the Chicot Spectator, a weekly newspaper printed in Lake Village, Arkansas, which had a general and *bona fide* circulation in Eudora, and about one-half of which was devoted to the news of Eudora, being edited by a local reporter or editor.

The form or subject-matter of the notice is not attacked or questioned, but appellant contends that it is void and of no effect because the newspaper in which same was inserted for the required time was not printed in the corporate limits of Eudora.   The provision in Amendment number 16 to the Constitution relative to the notice is as follows:

"Notice of said election shall be given by the mayor by advertisement weekly for at least four times, in some newspaper published in said municipality, and having a *bona fide* circulation therein; the last publication to be not less than ten days prior to the date of said election."

834

We do not think the word "published" as used in the amendment is altogether synonymous with the word "printed." If that meaning alone should be attributed to the word "published," in the connection in which used, it follows that the people intended by the passage of the amendment to deny cities in which a weekly newspaper is not printed the privilege of voting bonds to build a public hall. Certainly it was not the intention off the people to penalize a city simply because a weekly newspaper was not printed therein. The intention was to accord to all cities the privilege, by a majority vote of the electors, of issuing bonds to build a public hall. As there is nothing in the amendment to indicate that the people intended to discriminate between cities of the State relative to voting bonds to construct a public hall, the word "published" should not be restricted in meaning so as to result in such a discrimination. The common and ordinary meaning of the word "published," according to Webster's New International Dictionary, is "to make public, to make known to the people in general." The newspapers might be printed but never published. It is only published when put in general circulation. The proper and correct meaning of the word "published," as used in the amendment, is that the notice must be inserted for the required time in a newspaper that will make the special election and the date thereof a public matter or known to the people in the city affected. In the instant case the notice was promulgated or proclaimed in a newspaper that had five hundred subscribers in the corporate limits of Eudora, and about one-half of which was devoted to the news of said town, being edited by a local reporter or editor.

This court has adopted a liberal rule governing the sufficiency of notices of special elections. *Wheat* v. *Smith,* 50 Ark. 266, 7 S. W. 161; *Hogins* v. *Bullock,* 92 Ark. 67, 121 S. W. 1064, 19 Ann. Cas. 822. We think the liberal rule announced in the cases cited should be applied to the instant case, because in doing so the true

intent of the people in the adoption of the amendment will be reflected in the construction of the word "published" in the connection used without doing violence to the language and context. If the word "published" should be restricted in its meaning to the meaning of its synonym "printed" then the intent of the people would not be reflected in the construction.

No error appearing, the judgment is affirmed.

Mr. Justices SMITH and MEHAFFY dissent.

SMITH, J., (dissenting). The majority say that the sole question presented by this appeal is whether the notice given by the mayor of the special election meets the requirement for such notice provided in the Amendment to the Constitution of the State referred to as Amendment No. 16. They also say that "Certainly it was not the intention of the people to penalize a city simply because a weekly newspaper was not printed therein. The intention was to accord to all cities the privilege, by a majority vote of the electors, of issuing bonds to build a public hall."

With the greatest deference to the majority, I dissent.

The amendment was not proposed and adopted to regulate the manner of the exercise of a power. Its purpose was to confer a power which did not previously exist, and, therefore, only such power exists in the matter of issuing bonds as the amendment confers. A proposition as elementary as this requires no citation of authority to support it.

It does not "penalize" a municipality to say that it may not issue bonds for municipal purposes. Indeed, it is not contended that all municipalities may do so. On the contrary, only cities of the first and second class may do so. The incorporated towns, which comprise a large majority of the municipalities, may not do so, and there is a wise reason for this "penalty," if it may be called such.

It was no doubt thought by the proponents of this amendment and by the people in adopting it that the cities of the first and second class would have newspapers published in their limits, through which publicity of a proposed bond issue might be given, which would not exist in the case of the smaller municipalities. But, whatever the reason for the discrimination, if such it be, between the municipalities of the State, the fact remains that the amendment itself provides that the power there conferred, and which does not otherwise exist, may be exercised only after the publication of notice of the election by advertisement in some newspaper "published in said municipality and having a *bona fide* circulation therein." There can be no question but that this power cannot be exercised until the precedent condition of publication has been performed, and the majority opinion recognizes that fact. They say, however, that there was publication as required by the amendment, and this is the point of difference.

In this connection, it will be observed that there must not only be publication in a newspaper published in the municipality proposing to issue bonds, but the newspaper must be one having a *bona fide* circulation therein. This last is an additional requirement, and means that the publication must be in an established paper, one of whose existence the citizens are advised, and to which they are accustomed to look for important news, especially of a local character, and not in some publication which might be established in the community overnight for the purpose of apparently complying with the Constitution, of which the people were not advised and to which they were not accustomed to look for information concerning their local affairs.

It occurs to me that the case of *Gibson* v. *Incorporated Town of Hoxie*, 110 Ark. 544, applies with peculiar force just here. In that case an ordinance was passed by the town of Hoxie creating an improvement district, and providing for the assessment of benefits to

pay for its construction. The ordinance of the town was passed pursuant to the authority conferred by §§ 5666 and 5685, Kirby's Digest, which later became §§ 5650 and 5668, C. & M. Digest, respectively. These sections required publication of notice of the passage of the ordinances establishing improvement districts in some newspaper published in the city or town in which the district was established.

The notices required by these sections of the statute were published in Walnut Ridge, an adjoining but separate municipality, there being no newspaper published in Hoxie.

In holding that this publication did not comply with the statutes cited, it was there said: ''The Legislature had the right to prescribe the terms upon which an improvement district might be created, and it made the publication of these ordinances in some newspaper published in the town a prerequisite. Doubtless, the Legislature thought it unwise to permit the establishment of these districts in towns which were too small to have, or which did not have, a newspaper therein. But we need not seek the legislative reason; it is sufficient if we know the legislative will. And publication in a newspaper published in another town did not meet the requirements of the law. *Jackson* v. *Beatty,* 68 Ark. 273.''

So here the people, in adopting the amendment designated as No. 16, may have thought it unwise to confer the authority to issue bonds upon a municipality which did not have a newspaper published in its confines and having a *bona fide* circulation therein, to give publicity to the proposed bond issue. But, as was said in the Hoxie case, *supra,* we need not seek the legislative reason, it is sufficient to know the legislative will. So, here, we need not inquire why certain cities have been ''penalized,'' it suffices to know what limitations have been imposed by the Constitution, and we should therefore deny the right to issue bonds to any city upon which the Constitution has not conferred that power, even though,

in doing so, an apparent discrimination is made between the cities of the State.

No doubt the paper published in Walnut Ridge was largely circulated in the adjoining—but separate—municipality of Hoxie. But circulation did not suffice. The holding in that case was that circulation was not sufficient, as the statute required publication in a newspaper published in Hoxie, and the ordinance was held invalid, because this requirement of the statute had not been complied with, although it was one which could not have been complied with for the reason that there was no newspaper published in Hoxie.

It is true that § 5650, C. & M. Digest, was repealed by § 1 of act 64 of the Acts of 1929 (Volume 1 Acts 1929, page 24), and that § 5668, C. & M. Digest, was amended by § 13 of the above mentioned Act of 1929, so that notice may now be given of municipal ordinances creating improvement districts although no newspaper is published in the town affected. But there has been no amendment of the Constitution in respect to issuing municipal bonds after publication of notice in some newspaper published in the city affected.

I submit, with all deference to the majority, that the practical effect of their opinion is to eliminate this requirement of the Constitution. Some newspaper circulates and has a *bona fide* circulation in every city in the State, and it is a matter of common knowledge that these newspapers have correspondents in the cities having no newspapers, and that space is assigned in these newspapers to these correspondents, with appropriate headlines designating the sources of the correspondence, and if publication of the notice of the bond elections in such a newspaper suffices, this limitation of the Constitution has been annulled, for all practical purposes.

We had occasion to consider the place of "publication" of a newspaper in the case of *Drainage Dist. No. 9 of Miller County* v. *Merchants' & Planters' Bank,* 176 Ark. 474. We there considered the requirements of

§§ 3607 and 3615, C. & M. Digest, relating to the notice of the formation of drainage districts, the publication of which notice was held to be jurisdictional. These sections of the statute required publication of notices in some newspaper published and having a general circulation in the county where the district was to be organized.

The facts in that case were as follows: "The clerk complied with the order of the court by publishing such a notice in the Texarkana Evening News, a newspaper actually printed in the State of Texas about one-half block across the State line from the Arkansas side, but which carried a Texarkana, Arkansas, headline and dating, and the whole issue of such newspaper, after being so printed in Texas, was actually carted to the office of the Texarkana Evening News on the Arkansas side off the State line, and about one-half block therefrom, and there, for the first time, released and distributed to the public, both by newsboys and by mail."

After a review of the authorities we held, under the facts stated, that the Texarkana Evening News was published in Arkansas. It was there said: "The Illinois Supreme Court, in *Polzin* v. *Rand-McNally & Co.*, 250 Ill. 561, 95 N. E. 623, Ann. Cas. 1912B, 471, defined the word 'published' as follows: 'By the word 'published' is clearly meant the place where the newspaper is first issued or printed, to be sent out by mail, or otherwise.' See also (numerous authorities cited). And in 29 Cyc. under the head of 'Notices,' it said: 'The place of publication of a newspaper is that indicated on its face, and such paper is printed in the place so designated within the meaning of a statute requiring the publication of a certain advertisement, and it matters not that part or even all of its issue is printed elsewhere, or that part of its issue is mailed elsewhere. The whole city, village or township in which a newspaper is published is its place of publication within the meaning of a statute requiring an advertisement to be published in a newspaper.' "

Under these definitions the Chicot Spectator was published in Lake Village, and not in Eudora. Certainly it was not published in both places, and as it was "for the first time released and distributed to the public" from Lake Village, and not from Eudora, the former, and not the latter, was the place of its publication.

I find nothing in the cases of *Wheat* v. *Smith,* 50 Ark. 266, and of *Hogins* v. *Bullock,* 92 Ark. 67, 121 S. W. 1064, which gives any support to the conclusion which the majority has reached. It is true, as the majority say, that the court in those cases "adopted a liberal rule governing the sufficiency of notices of special elections," but in the Hogins case, *supra,* the court quoted from the Supreme Court of Indiana as follows: "All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void." *Jones* v. *State,* 153 Ind. 440, 55 N. E. 229.

Here, it will be remembered, the election has not been held, and the citizen and taxpayer seeks to compel the giving of proper notice before holding the election, and, as was there said, "all provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose." The provision for proper notice must therefore be held as mandatory, because its enforcement is sought before the election has been held.

I do not, however, rest my dissent upon this proposition alone. "The provisions (in regard to notice) affect an essential element of the election," and for this reason is mandatory, because the power granted—that of

issuing bonds—is one which may only be exercised in the manner provided by the amendment which confers the power. Notice must be given in the manner which the amendment provides, and as this, in my opinion, has not been done, I respectfully dissent, and I am authorized by Mr. Justice MEHAFFY to say that he concurs in the views here expressed.