(No. 41502.—

THE PEOPLE *ex rel.* City of Chicago Heights, Petitioner, *vs.* MAURINO R. RICHTON, Mayor, Respondent.

*Opinion filed November 26, 1969.*

Angelo A. Ciambrone, of Chicago Heights, for petitioner.

Peter J. Coppa, of Chicago, for respondent.

Mr. Justice Kluczynski delivered the opinion of the court:

This is an original action in *mandamus* whereby the City of Chicago Heights seeks issuance of the writ directed to Maurino R. Richton, mayor of said city, to execute public library bonds of the city in the amount of $980,000, which were approved by the voters in a special election held on February 27, 1967, and authorized by ordinance adopted by the city council on May 6, 1968.

Respondent mayor refused to sign the bonds on behalf of the city because he says the bonds are illegal and void and can not be an obligation of the city. He contends that the election held on February 27, 1967, which authorized the bonds was illegal in that it was not held under the authority of the Board of Election Commissioners of the City

of Chicago, *ex officio* Election Commissioners of the City of Chicago Heights, (hereinafter referred to as the Board), which he contends was the only legal authority for holding and conducting elections in said city since April 4, 1922, when the city adopted the provisions of the City Election Law (Ill. Rev. Stat. 1967, ch. 46, article 6, 14, and 18). It is his position that the attempt to reject the City Election Law at the November 8, 1966, election was invalid because it was not in compliance with sections 6—17 and 6—19 of article 6 of the Election Code. Ill. Rev. Stat. 1967, ch. 46, pars. 6—17 and 6—19.

Section 6—17 of article 6 provides that whenever 1000 of the legal voters in a city, fitting the description of Chicago Heights, shall petition the circuit court of the county to submit to a vote of the city electors the proposition as to whether such city shall reject the City Election Law, the judge shall order and submit the proposition to the voters at the next succeeding general, State, county or municipal election to be held in not less than 30 days from the entry of such order. It further requires that notice of election "shall be given by said judge at least 20 days prior to such election by publication in one or more newspapers of general circulation published within such city."

Section 6—19 of article 6 provides: "The election officials canvassing returns shall cause a statement of the result of such election on the rejection of this Article 6 and Articles 14 and 18 of this Act to be certified to the court. If a majority of the total votes cast at such election is in the affirmative, the court shall enter an order declaring said Articles rejected and shall file a copy of the order in the office of the Secretary of State. Thereupon said Articles shall cease to be operative and binding in such city."

On September 26, 1966, the required number of legal voters petitioned the circuit court of Cook County for the submission of the rejection proposition and the circuit judge that day ordered that it be submitted to the electors of the

city at the general election to be held on November 8, 1966. The order further provided that the required notice be published "* * * as required by statute." On October 7, 1966, the Board caused notice of the general election, and particularly the submission of the rejection proposition, to be published in the Chicago's American, a newspaper of general circulation throughout the county. Thereafter, on October 27, 1966, a second notice of the submission of the proposition in said election was published in the Chicago Heights Star, a newspaper printed and circulated in the City of Chicago Heights. The Board certified to the court the results of the November election and on December 13, 1966, the court entered an order declaring the results of the election as 6132 for and 5229 against rejection and directed the Board to transfer all appropriate records to the county clerk within 24 hours after the entry thereof. A copy of said order was filed with the Secretary of State and the Board gave up control and supervision of all elections in the city.

Additionally, on February 13, 1967, the Governor signed a validating statute, H.B. 199 (Ill. Rev. Stat. 1967, ch. 46, par. 701) which provides: "When, prior to the effective date of this Act, in any city with a population of 100,000 or less, a majority of the legal voters voting on the proposition of whether the city election law shall be rejected, as provided in Section 6—18 of The Election Code, have voted in favor of the rejection of the city election law and the election is in other respects in conformity with law, the publication of the election notice is declared to be legal and valid and the election is validated, notwithstanding that the publication was only 12 days prior to the election by publication in one or more newspapers of general circulation published within the city."

It is the respondent mayor's contention that the word "published" as used in section 6—17, *viz.*, "published within such city", means to *print* and issue within the city. He argues that the notice of October 7, 1966, in the Chicago's

American was therefore inadequate because that paper is not printed within the City of Chicago Heights. We find respondent's argument unpersuasive. In *Perkins* v. *Board of County Comrs. of Cook County,* 271 Ill. 449, 475, the court said: "The object of requiring publication of such ordinances in a newspaper having a general circulation in the municipality in which it is to become effective is in order that its provisions may become known to the inhabitants of such municipality. The primary meaning of the word 'publish' is 'to make known.' " Further, from a reading of section 12—1 of the Election Code (Ill. Rev. Stat. 1967, ch. 46, par. 12—1), it is clear that the legislature knew quite well the difference between the words "print" and "publish". That section reads in pertinent part: "* * * except in cases otherwise provided for, the county clerk shall publish * * * a notice * * * in two or more newspapers *printed and published* in the county * * *." (Emphasis ours.) In section 6—17 the legislature required only that the notice be given in a newspaper "of general circulation *published* within" the city. (Emphasis ours.) Had the General Assembly intended that notice of election be given in a newspaper both printed and published in the community, it would have done so with appropriate language, as was done in section 12—1. Accordingly, we hold that the word "published" as used in section 6—17 of the Election Code is not synonomyous with the word "printed" but means to make public or to make known to people by newspapers of general circulation.

It is also respondent's claim that the notice of October 7, 1966, was insufficient because it was given by the Board and not by the judge personally ordering the notice of election as provided by statute. Section 6—17 states in part: "Notice of election shall be given by said judge at least 20 days prior to such election * * *." The judge in the instant case entered an order that the required notice be published "as required by statute." The notice as given by the

Board was sufficient compliance with the statute.

An examination of the entire statute makes it clear that it was not the intent of the legislature to require the judge to personally publish the notice of the special election. Section 6—17 provides that after the required number of voters petition the circuit court in the county in which the city is located "the judge shall enter an order upon the records of the court approving such petition and thereupon he shall submit such proposition to the legal voters of such city * * *." In section 6—21 (Ill. Rev. Stat. 1967, ch. 46, par. 6—21) it is stated that the Board of Election Commissioners "shall be appointed by the circuit court" and that each commissioner once qualified "shall be an officer of such court." As officers of the court, the commissioners carry out the court's orders. Once the court requires notice be given, as was done in the instant case, the actual compliance therewith is merely a ministerial or mechanical act. It is inconceivable that by the language of section 6—17 the legislature intended the judge, to whom the petition was submitted, to literally perform these various mechanical activities. We hold that the notice given on October 7, 1966, in the Chicago's American was in compliance with section 6—17. It is therefore unnecessary for us to consider respondent's other argument concerning the effectiveness of the second notice or the validity of the curative legislation enacted thereafter. Ill. Rev. Stat. 1967, ch. 46, par. 701.

Respondent mayor finally contends that the proposition to reject the city election law was not affirmatively voted on by a majority of those voting at the election. The election records indicate that of 13,667 legal voters appearing and voting in the City of Chicago Heights at the general election, only 11,361 voted on the proposition to reject the City Election Law—6132 for and 5229 against rejection. The question then is whether a "majority of the total votes cast" as contained in section 6—19 refers to the votes cast

on the rejection proposition alone or all votes cast within the municipality at the general election.

Section 6—19 provides that the election officials cause "a statement of the result of *such election on the rejection* [of the city election law] to be certified to the court." [Emphasis supplied.] Clearly this refers only to the results of the voting on the special proposition. The statute then continues: "If a majority of the total votes cast at *such election* is in the affirmative, the court shall enter an order declaring said Articles rejected * * *." It is apparent from a reading of the statute that "majority" refers to the total votes cast at such election on the rejection of the city Election Law; that is, on the single proposition and not the total votes cast at the general election.

The writ is accordingly awarded.

*Writ awarded.*