SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Plaintiff-Appellant, *v.* HOME SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants-Appellees.—PROSPECT FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* UNITY SAVINGS ASSOCIATION *et al.*, Defendants-Appellees.—SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* HOME SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants-Appellees.—PROSPECT FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* UNITY SAVINGS AND LOAN ASSOCIATION *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 77-575, 77-576, 77-737, 77-738 cons.

Opinion filed May 8, 1978.

Russell, Bridewell, Sembower & Cook, of Chicago (David A. Bridewell and Robert C. Smith, Jr., of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Jerome J. Webb, Assistant Attorney General, of counsel), for appellee Commissioner of Savings and Loan Associations.

Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan (John R. Sloan, of counsel), for appellee Home Savings and Loan Association.

Morrissey, Kabat, Lillig & Kemp, of Oak Brook (Walter W. Morrissey, of counsel), for appellee Unity Savings Association.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This is a consolidated appeal by Second Federal Savings and Loan Association (Second Federal) and Prospect Federal Savings and Loan Association (Prospect Federal) (collectively referred to as "plaintiffs") from trial court orders dismissing their individual complaints for administrative review of four decisions of the Commissioner of Savings and Loan Associations (Commissioner) and the Illinois Savings and Loan Board (Illinois Board).

Appeals Nos. 77-575 and 77-737 involve an application by Home Savings and Loan Association of Waukegan (Home) to relocate its business office to Fox Lake, Illinois. Appeals Nos. 77-576 and 77-738 involve an application by Unity Savings Association of Schaumburg (Unity) to relocate its business office to Lombard, Illinois.

### THE HOME CASES

On or before June 30, 1976, Home filed with the Commissioner an application requesting permission to relocate its principal office from Waukegan to Fox Lake, Illinois, while retaining a facility at its present location in Waukegan. Second Federal was then operating an office in Fox Lake. On June 30, 1976, notice of Home's application was published in the Chicago Daily News, a newspaper of general circulation in Illinois, pursuant to the Illinois Savings and Loan Act (Act) and the Rules and Regulations of the Commissioner. (Ill. Rev. Stat. 1975, ch. 32, par. 744(h)(4), and Rules and Regulations of the Commissioner, art. XI, §2.) In addition to announcing the planned relocation, the notice stated, "Any persons objecting to the Application as hereinabove set forth may in person or by Attorney submit notice of objection to the application within ten (10) days following the date of publication of this notice. Objecting parties will be notified of the procedure for perfecting said objections." This additional information was supplied in accordance with the Rules and Regulations of the Commissioner, article XI, section 3.

According to Second Federal's brief, it first learned of Home's application on August 3, 1976. On August 4, 1976, Second Federal wrote two letters to the Commissioner. The first requested a copy of the Home application be made available so that Second Federal might prepare its formal objections. The second letter set forth the initial objections to the application and requested the matter be set for hearing. The principal objection advanced by Second Federal was that the publication of notice in the Chicago Daily News did not meet the requirements of article XI,

section 2 of the Rules and Regulations of the Commissioner, which provides:

> "Upon receipt of the application, the Commissioner shall review the file and, if complete to his satisfaction, shall authorize the applicant to publish in newspapers of general circulation in the State of Illinois, notice of filing of its applications. Publication in the manner and on forms prescribed by the Commissioner in both the community of the new office and the community of the present office shall be made within 15 days of the date of authorization."

Specifically, Second Federal contended that publication in the Daily News was not publication in either the community of the new office or the community of the present office since the Daily News was not published in those areas.

On August 9, 1976, the Commissioner responded that the publication of notice met the requirements of article XI, sections 2 and 3 of his rules and regulations as further defined by a "letter of general circulation" dated April 7, 1976. Article XI, section 3 provides in part:

> "Any association or person wishing to object to any application filed pursuant to Section 1 hereof and within the time requirements set forth in the applicant's authorized published notice shall:
>
> (a) File in triplicate on form or forms prescribed by the Commissioner its verified objections at the Springfield Office of the Commissioner."

The April 7, 1976, letter further commented on article XI, sections 2 and 3 as follows:

> "It should also be noted that the time period in which objectors may file their *notice of intent* to object has been shortened from 30 days to 10 days from the date of publication. On the same subject, it has been determined by this Office that notice published in any of the three (3) Chicago daily newspapers (Tribune, Sun Times or Daily News) is appropriate for relocation or facility sites located in the Chicago SMSA."[1]

The Commissioner went on to state that Second Federal's correspondence notifying the Commissioner of its objection was received 34 days after publication and, therefore, its "request to review the file and have the matter set down for hearing must be denied."

On August 10, 1976, Second Federal filed a petition with the Illinois Board for review of the Commissioner's denial of the requests. The Board adopted a resolution on August 23, 1976, which denied the petition.

---

[1] "SMSA" stands for the "Standard Metropolitan Statistical Area", a term employed by the U.S. Department of Commerce, Bureau of the Census, and consists of Cook and the five surrounding counties of Will, Du Page, Kane, McHenry and Lake. It is, by way of comparison, the same "Metropolitan Region" as defined in the Regional Transportation Authority Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 703.06).

Second Federal then filed its first complaint for administrative review. The complaint asserted that the Commissioner's actions were arbitrary, capricious and an abuse of discretion and that the notice published in the Chicago Daily News was contrary to the Commissioner's own rules. Further, Second Federal claimed that the 10-day requirement for filing notice of intent to object was arbitrary, capricious and unreasonable. The complaint prayed that the orders of the Commissioner and the Board be reversed and a stay order issued to prevent the relocation until Second Federal's objections were filed and a hearing on the relocation was held. The trial court granted the stay order.

The Commissioner moved the trial court to dismiss the complaint for failure to state a cause of action. The motion asserted that publication in the Chicago Daily News was proper within article XI, section 2 of the Commissioner's rules in that the Daily News was a newspaper of general circulation in both Fox Lake (location of new office) and Waukegan (location of existing office).

After a hearing on the motion, the trial court found that publication in the Daily News was proper and the 10-day requirement was not arbitrary or unreasonable. An order was entered on February 14, 1977, dismissing the complaint and vacating the stay order. Second Federal filed an appeal (No. 77-575) and now contends that the publication of notice did not meet the statutory requirements and the 10-day requirement and the Commissioner's refusal to grant Second Federal access to the application were arbitrary, capricious and unreasonable.

On February 28, 1977, the Commissioner entered an order approving Home's application for relocation. Second Federal filed a complaint for administrative review of that order. The complaint was dismissed on the motion of the Commissioner on the grounds that Second Federal had failed to exhaust its administrative remedies by failing to file its notice of intent to object within the 10-day period allowed. From this dismissal, appeal No. 77-737 was taken.

### THE UNITY CASES

The facts in the Unity situation are very similar to those in the Home matter. The difference is essentially one of dates. On or before December 1, 1976, Unity filed its application with the Commissioner requesting permission to relocate its principal office from Schaumburg to Lombard, Illinois, while retaining a facility at its present location in Schaumburg. Prospect Federal was then operating an office in Lombard.

On December 1, 1976, notice of Unity's application was published in the Chicago Tribune. According to Prospect Federal, it first learned of the proposed relocation on December 23, 1976. Prospect Federal wrote the Commissioner that same day requesting a copy of the application so that

it might prepare its formal objections. On December 30, 1976, Prospect notified the Commissioner that it considered publication in the Chicago Tribune to be improper and that its objections should be allowed.

The Commissioner and the Board denied Prospect Federal's request to have its objections heard. A complaint seeking administrative review of these orders was then filed in the circuit court. The Commissioner made a motion to dismiss the complaint which was granted for the same reasons as was the motion to dismiss the initial complaint of Second Federal. Appeal No. 77-576 followed.

Prospect Federal's second appeal (No. 77-738) is from the Commissioner's order approving Unity's application for relocation. Unity's complaint for administrative review of that order was dismissed, and appeal followed.

Turning to the merits of both situations, the same issues are raised by Second Federal and Prospect Federal. They urge first that publication in one of the daily Chicago newspapers did not satisfy the statutory requirement of publication. The Act provides that the Commissioner may not approve a relocation unless he finds "notice of the association's proposal to establish a new office has been published at least once both in the community of the proposed new location and in the community of the present location." (Ill. Rev. Stat. 1975, ch. 32, par. 744(h)(4).) The Act also defines "community" (Ill. Rev. Stat. 1975, ch. 32, par. 710.05), and "published" (Ill. Rev. Stat. 1975, ch. 32, par. 710.17) as follows:

" 'Community': a city, village, or incorporated town in this State."

" 'Publication,' 'publish,' or 'published': printed in the American language in a newspaper of general circulation published in the community in which the association's business office is located, or if no such newspaper exists in that community, then in the county in which such business office is located. Unless otherwise specified in this Act, publication shall be made once each week for 3 successive weeks."

The plaintiffs' argument in this court is that none of the daily Chicago newspapers are published in Waukegan, Fox Lake, Schaumburg, or Lombard, and, therefore, notice published in a Chicago newspaper does not satisfy the publication requirement of the Act when a non-Chicago community is involved. In support of this proposition plaintiffs cite *People ex rel. O'Connell v. Read* (1912), 256 Ill. 408, 100 N.E. 230. There, the court held invalid a notice in a newspaper that was "first issued" in Chicago even though it was a newspaper of general circulation in the Chicago suburb there concerned. The court defined the place of publication of a newspaper as "the place where it is first put into circulation,—where it is first issued to be delivered or sent, by mail or

otherwise, to its subscribers." (*Read,* 256 Ill. 408, 410.) The plaintiffs concede that both the Chicago Tribune and the Chicago Daily News are newspapers of general circulation throughout the State of Illinois. They submit, however, that the notice requirement of the Act can only be met by publication in a newspaper that is first issued to the public in the communities of present and proposed locations. The plaintiffs complete the argument by alleging that the Chicago daily newspapers are first issued in Chicago and not in the surrounding communities.

We find plaintiffs' argument unpersuasive. In *People ex rel. City of Chicago Heights v. Richton* (1969), 43 Ill. 2d 267, 253 N.E.2d 403, the court was called upon to construe a statutory notice provision. The provision required that notice of a forthcoming city election be published "in one or more newspapers of general circulation published *within such city.*" (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 46, par. 6—17.) The argument was made that a newspaper printed in Chicago was not a newspaper published within the city of Chicago Heights and, therefore, notice of a Chicago Heights election could not properly be given by a Chicago newspaper. The court disagreed, stating that the purpose of requiring publication of notice in newspapers of general circulation in the community is to enable the provisions of the notice to become known to the inhabitants of the community.

■■ In our opinion, the meaning to be given the term "publish" when used in a notice provision is clear. When so used the word publish means "to make public or to make known to people by newspapers of general circulation." (*Richton,* 43 Ill. 2d 267, 271.) Plaintiffs concede that the Chicago daily papers are circulated throughout the State. We conclude, therefore, that the notices here involved were properly published.

We consider next the ruling of the Commissioner that plaintiffs' failure to file notice of intent to object within 10 days barred their right to object to the applications. The Act empowers the Commissioner "[t]o establish such regulations as may be reasonable or necessary to accomplish the purposes of this Act." (Ill. Rev. Stat. 1975, ch. 32, par. 841.2(b)(2).) As noted above, article XI, section 3, of the Commissioner's rules requires any association wishing to object to an application for relocation to file its objections within the time requirements set forth in the published notice. By letter of general circulation dated April 7, 1976, the Commissioner further refined section 3 by indicating that notice of *intent* to object must be filed within 10 days of the date of publication. Neither plaintiff alleges that it did not receive, or was not aware of the April 7 letter. Plaintiffs contend, however, that the notice published by the defendants only contained a time limit for filing notice of intent to object and did not contain a time limit for filing the objections themselves.

■■ By this argument the plaintiffs say that under the rules the

publication of notice could have set a 10-day limit for filing objections, but the rules do not authorize a 10-day limit for filing notice of intent to object. This places the plaintiffs in the anomalous position of complaining that they were not required to perform the more burdensome alternative within the time limitation. The fact that no express limits for filing objections were contained in the notices of application does not relieve plaintiffs from complying with the requirements that were in fact set out in the notices, especially when those requirements were made known to plaintiffs by the special letter of April 7. We reject this argument.

Plaintiffs' second point concerning the unreasonableness of the Commissioner's ruling is more direct. They contend that a 10-day limit, in and of itself, is unreasonably short and does not fairly constitute a sufficient period in which notice may be received and acted upon. Plaintiffs support this argument by pointing to certain sections of the Savings and Loan Act that evidence a legislative intent to protect associations already operating in a proposed area of relocation from undue injury which may be caused by the relocation. (Ill. Rev. Stat. 1975, ch. 32, pars. 744(h)(3) and 702(c).) From this premise plaintiffs contend the 10-day rule is unreasonable in that it "subverts the chance of objections ever getting heard."

Further, plaintiffs claim that there is no need for such a short period for allowing notice of intent to object since the Commissioner allows applicants 60 days after publication of notice to perfect their applications. Once the application is perfected the objector is allowed to review the file and is given time to prepare a detailed response, which, when filed, is followed by a hearing.

In answer to these arguments the Commissioner points out that in imposing the 10-day notice requirement he was simply bringing the Illinois system in line with the Federal Home Loan Bank system, of which plaintiffs are members. He argues that the policy of the Federal Home Loan Bank Board (Federal Board) of sending notice to all savings and loan institutions in the relocation area is a matter of grace and is not a requirement of the Federal rules for relocations. The Commissioner asserts that under the Federal system the failure of the Federal Board to give such notice would not excuse a savings and loan association from filing its notice of objection within the 10-day period.

The Commissioner also responds that he is authorized by the Act to establish regulations as may be "reasonable or necessary" to accomplish the purposes of the Act. In setting the 10-day notice requirement he was merely exercising his authority in the manner he felt best effectuated the purposes of the Act.

Finally, the Commissioner answers that the filing of notice of objection is merely a ministerial act which takes little time or preparation. The only

burden on the associations is to scan the legal notices every few days to ensure they receive notice within the 10-day period.

Having carefully considered all these arguments, we cannot conclude that the 10-day notice requirement is unreasonable. The Commissioner has the authority to make rules and regulations in furtherance of the purposes of the Act (Ill. Rev. Stat. 1975, ch. 32, par. 841.2(b)(2).) The Commissioner's interpretation of the Act and his regulations in furtherance of that interpretation are entitled to great weight. (*People ex rel. Colletti v. Pate* (1964), 31 Ill. 2d 354, 359, 201 N.E.2d 390.) "[A]dministrative action taken under statutory authority will not be set aside unless it has been clearly arbitrary, unreasonable or capricious." *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782.

■■ After this comparison with the Federal system, we cannot conclude that the Commissioner's action in adopting a 10-day rule is arbitrary or capricious. The Commissioner could reasonably assume that the Federal Board, having control over a much larger system, would employ superior expertise in developing its regulations. Therefore, the Commissioner might rationally conclude that the 10-day rule adopted by the Federal Board was also sufficient for Illinois savings and loan institutions.

In addition, the Federal Board's policy of giving actual notice to interested parties has not been established of record. We note that there is no such requirement in the regulations cited in the briefs (12 C.F.R. §545.14(g)(3) (1976).) If in fact the Federal Board has such a policy, this would be a commendable practice. However, from what we have been able to ascertain from the record before us, such a policy, if it exists at all, is not mandatory, and failure to receive such mailed notice would not excuse an association from filing within the 10-day limit set out in the Federal regulations. It therefore appears that the Commissioner did not act arbitrarily or capriciously in adopting a similar rule.

We also find the 10-day rule is a reasonable one. As a practical matter, it is difficult to conceive of any objectors to a proposed relocation other than associations already in existence in the relocation area. These institutions have an important interest to protect and of necessity are required to follow closely changes in the law and in the community. The filing of a notice of intent to object is a purely ministerial act. The time it takes to prepare such notice is negligible, as evidenced by the speed with which the plaintiffs here performed this act once notice was received. We conclude that the 10-day rule is a reasonable exercise of the Commissioner's judgment and imposes no undue hardship upon plaintiffs.

Plaintiffs' final contention concerns the Commissioner's refusal to allow them to review the applications for relocation. The record shows that

plaintiffs sought permission to review the applications so they could prepare objections to them. The Commissioner denied the plaintiffs access to the applications.

■■ Upon the foregoing facts plaintiffs were not entitled to have the applications made available to them. Their express purpose in seeking review of the applications was to prepare objections. By their failure to comply with the Commissioner's rules the plaintiffs waived their right to file objections. In our opinion, no useful purpose could be served by allowing them to review the applications.

■■ The plaintiffs raise for the first time on appeal the claim that they had a common law right to inspect these applications as public records. The failure to raise this issue at trial precludes us from deciding it on appeal. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417.) We note parenthetically, however, that even if plaintiffs had a right to review the applications as interested members of the public, this would not affect the outcome of the case before us.

In view of the conclusions above reached, it is unnecessary to consider the remaining contentions raised by Home, Unity and the Commissioner. The orders appealed from are affirmed.

Judgments affirmed.

McGLOON and O'CONNOR, JJ., concur.