NORTH SHORE SAVINGS AND LOAN ASSOCIATION *et al.*, Plaintiffs-Appellees, *v.* TIMOTHY E. GRIFFIN, Commissioner of Savings and Loan Associations for the State of Illinois, *et al.*, Defendants-Appellants.

Second District   No. 77-289

Opinion filed May 19, 1978.

William J. Scott, Attorney General, of Chicago, and Edward F. Streit and Richard Kane, both of Aurora (Jerome Webb, Assistant Attorney General, of counsel), for appellants.

Kenneth Glick, of Overholser, Ray, Flannery & Glick, of Libertyville, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiffs, two savings and loan associations with offices in Waukegan, filed this action, seeking administrative review of a decision by Timothy E. Griffin, Commissioner of Savings and Loan Associations (hereinafter referred to as the Commissioner), allowing defendant First Financial Savings and Loan Association (hereinafter First Financial), to relocate its business office from Downers Grove to Waukegan. In their complaint plaintiffs ask that the Commissioner's decision be reversed for numerous reasons, including failure of First Financial to properly comply with the publication requirements of section 3—4(h) of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 744(h)). As a preliminary matter, plaintiffs presented a "motion for summary reversal" on the ground of improper publication. The trial court granted the motion, finding that publication of notices required by the Illinois Savings and Loan Act is governed by section 5 of "An Act to revise the law in relation to notices" (Ill. Rev. Stat. 1975, ch. 100, par. 5). The trial court vacated the Commissioner's decision and remanded the matter to the Commissioner to conduct new hearings after proper publication in accordance with section 5 (Ill. Rev. Stat. 1975, ch. 100, par. 5). Both First Financial and the Commissioner filed notices of appeal from that decision but only the Commissioner has filed a brief in this court.

Prior to oral arguments in this case plaintiffs filed a motion to enjoin certain other proceedings allegedly taking place before the Commissioner or, in the alternative, to dismiss the appeal as moot. We denied the motion for injunction but ordered that the motion to dismiss the appeal as moot be taken with the case. In their motion plaintiffs allege that First Financial has filed a new application seeking relocation from Downers Grove to Waukegan and has published the same in local newspapers within the counties involved. Plaintiffs urge that this is an

acquiescence by defendants to the order of the circuit court and, therefore, that the matter is moot. Plaintiffs also argue that two separate and conflicting decisions on the merits of First Financial's attempt to relocate might eventually result.

The Commissioner replies first that the plaintiffs' motion is improper in that it is based on facts which do not appear in the record and is not supported by affidavit, as required by Supreme Court Rule 361(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 361(a)). We agree with the Commissioner that plaintiffs' motion is not in proper form. Inasmuch as the question of mootness is important, and the Commissioner's objections to plaintiffs' motion do not contradict any of the alleged facts, we will consider the matter despite plaintiffs' failure to properly support their motion by affidavits.

The Commissioner takes the position that he did not acquiesce in the trial court's remand of proceedings to him because once the trial court reversed the Commissioner's order there was nothing to remand. The Commissioner further argues that it is his duty to process all applications filed with him in the normal course of business. He also urges that this appeal presents a heretofore undecided issue concerning the publication requirements of the Illinois Savings and Loan Act which is of substantial public interest and, further, that if we dismiss this appeal as moot the Commissioner might become involved in a situation which is capable of repetition but escapes review.

There is clearly merit to plaintiffs' arguments insofar as they apply to defendant, First Financial. Following the trial court's order herein, First Financial apparently voluntarily decided to abandon this particular proceeding and institute another proceeding following the rules as to publication laid down by the trial court. Inasmuch as defendant, First Financial, has also apparently voluntarily abandoned its appeal in this case, we do not find it necessary to rule on the question of mootness as it affects First Financial.

■■■ The Commissioner's status in this appeal, however, is slightly different from First Financial's. In essence the Commissioner is defending his order which was, in part, based upon his interpretation of the applicable statutes. Plaintiffs herein have at all times found fault with both the Commissioner's ultimate order and the particular interpretation placed upon the statutes by him. Insofar as these parties are concerned, their positions on the issues herein remain essentially unchanged. What has changed is the factual context in which the issues were first presented to the court. We agree with the Commissioner's contention that his acceptance of and processing of a new application by First Financial does not constitute an acquiescence to the circuit court's order. It is also apparent to us that there is no real danger of two separate and conflicting

decisions on the merits of First Financial's attempt to relocate. This case involves only the legal question of what is a proper publication. In deciding that question we would in no way be ruling on the ultimate merits of First Financial's first attempt to relocate. We are also of the opinion that the proper interpretation of the publication requirements of the Savings and Loan Act is a question of substantial interest not only to the Commissioner and the plaintiff associations, but also to all members of the general public. Further, we note that the question of what is a proper publication can arise in every case involving the relocation of a savings and loan association and that for this reason it would be highly desirable to have an authorative determination to guide the Commissioner in his decisions upon these applications. Therefore, because the issue presented herein is of substantial public interest, this case falls within the well-recognized exception to the general rule that a case which has become moot will be dismissed upon appeal. *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769; *Wachta v. Pollution Control Board* (1972), 8 Ill. App. 3d 436, 289 N.E.2d 484; *Partney v. Dallas* (1969), 111 Ill. App. 2d 261, 250 N.E.2d 166.

The substantive issue herein involves primarily the proper interpretation of section 3—4(h) of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 744(h)) which provides in relevant part:

"If a by-law amendment provides for a change in the location of an association's business office or the establishment of an additional office, the Commissioner shall not approve the amendment unless he finds that * * * (4) notice of the association's proposal to establish a new office has been published at least once both in the community of the proposed new location and in the community of the present location; * * *."

On April 7, 1976, the Commissioner issued a letter which interpreted this provision to mean:

"[T]hat notice published in any of the three Chicago daily newspapers (Tribune, Sun-Times or Daily News) is appropriate for relocation of facility sites located in the Chicago SMSA [consisting of Cook, Will, DuPage, Kane, McHenry and Lake counties]."

The Commissioner has maintained and applied his interpretation of the publication requirements at all times relevant herein.

Also relevant to the determination of the issue herein is the following definition appearing in section 1—10.17 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 710.17) which provides in relevant part:

" 'Publication,' 'publish,' or 'published': printed in the American

language in a newspaper of general circulation published in the community in which the association's business office is located, or if no such newspaper exists in that community, then in the county in which such business office is located."

In addition, the trial court held that section 5 of "An Act to revise the law in relation to notices" (Ill. Rev. Stat. 1975, ch. 100, par. 5), was applicable to the type of publication involved herein. That statute provides in part:

"When any notice is required by law or contract to be published in a newspaper (unless otherwise expressly provided in the contract), it shall be intended to be in a secular newspaper of general circulation, published in the city, town or county, or some newspaper specially authorized by law to publish legal notices, in the city, town, or county."

On this appeal the Commissioner contends that the proper interpretation of the word "published" appearing in section 3—4(h) is to make known by newspapers of general circulation. In support of his position he cites *People ex rel. City of Chicago Heights v. Richton* (1969), 43 Ill. 2d 267, 253 N.E.2d 403, and *Perkins v. Board of County Commissioners* (1916), 271 Ill. 449, 111 N.E. 580. He further argues that his interpretation of the statute is reasonable and is entitled to great weight and respect in the courts. The Commissioner also takes the position that plaintiffs failed to prove the place of publication of the Chicago Daily News, which is the particular paper in which First Financial published its notice of intent to relocate. Finally, the Commissioner argues that the trial court erred in making the general statute on notices (Ill. Rev. Stat. 1975, ch. 100, par. 5) control over the specific provisions of the Illinois Savings and Loan Act and the Commissioner's rules.

Plaintiffs reply that the proper interpretation of the word "published" in this statute is the place where the newspaper is first put into circulation or otherwise issued to be delivered or mailed to its subscribers. They rely upon *People ex rel. O'Connell v. Read* (1912), 256 Ill. 408, 100 N.E. 230, and *Polzin v. Rand, McNally & Co.* (1911), 250 Ill. 561, 95 N.E. 623, and several opinions of the Attorney General of Illinois. Plaintiffs contend that the Commissioner has exceeded his authority and attempted to vary the statutory requirements by issuing and enforcing his interpretation of the publication requirements. Plaintiffs also contend that they did sufficiently prove the place of publication of the Chicago Daily News by introduction of the certificate of publication. Finally, plaintiffs argue that all of the statutory provisions at issue herein are consistent and that only the Commissioner's interpretation of those requirements is at variance with the legislative intent.

■■ With regard to the proper weight to be accorded to the Commissioner's interpretation of the statute, we note that the supreme court recently stated the rule as follows:

> "A reasonable construction of an ambiguous statute by the governmental officers or departments charged with its enforcement, if contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence, creates a presumption of correctness which is only slightly less persuasive than a judicial construction of the same act." (*People ex rel. Watson v. House of Vision* (1975), 59 Ill. 2d 508, 514-15, 322 N.E.2d 15, 19.)

It is immediately apparent to us that this particular administrative interpretation of the statute, which was not issued until 1976, does not meet these requirements. In addition, an erroneous construction of the statute would not in any way be binding upon this court. (See *Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 87-88, 335 N.E.2d 600, 604.) We therefore deem it necessary to make an independent examination of legislative intent to determine the proper meaning of the word "published" as used in section 3—4(h) of the Act.

■■ The definition appearing in the Savings and Loan Act must, of course, be our starting point. That definition refers to " * * * a newspaper of general circulation published in the community * * *." (Ill. Rev. Stat. 1975, ch. 32, par. 710.17.) Our examination of the notices act relating to publication (Ill. Rev. Stat. 1975, ch. 100, par. 5) convinces us that its requirements are no different. That statute also speaks of a newspaper " * * * of general circulation, published in the city, town, or county * * *." These statutes are generally consistent with each other. In both the legislature spoke first of a newspaper of general circulation and then specifically used the word "published." This convinces us that the legislature intended that the word "published" should not be merely synonymous with the requirement that a newspaper be of general circulation in the community in question.

We also find that the definition in the Savings and Loan Act refers first to a newspaper published in the community where the association's business office is located but if no such newspaper exists, it mandates that publication should be in a newspaper published in the county in which the association's business office is located. This, to us, manifests an intent by the legislature to have such publications occur on as local a level as possible, in newspapers which would undoubtedly be directed primarily to matters of local concern. The existence of large metropolitan areas encompassing many communities in several counties was undoubtedly well known to the legislature when it last amended this statute in 1975, but

the legislature made no attempt to distinguish such metropolitan areas from other areas within the State.

At the same time the legislature made a minor change in the definitional section in 1975 it also made substantial changes in section 3—4(h) of the Savings and Loan Act. Prior to 1975 that section required only publication in the community of the proposed new location. The 1975 amendment makes publication mandatory in both the community of the proposed new location and the community of the existing location. The amendment also added two new findings which the Commissioner must make before he can approve an application to relocate. One of these findings is that the communities of the existing offices of the association will be properly and adequately served. In addition, we note that the 1975 amendment gave the Commissioner the specific authority to conduct public hearings on relocation applications to determine his findings. It is thus apparent to us that the legislature paid a substantial amount of attention to what should be the proper considerations in approving relocations of savings and loan associations. The fact that the legislature chose to require the two publications of the proposed relocation indicates an intent to make it broadly known within the communities affected. This, of course, was combined with no substantive change in the definition of publication. We therefore conclude that the legislature had no intent to change what had previously constituted a proper publication in these cases. We find no legislative intent to treat metropolitan areas differently than nonmetropolitan areas of the State. We believe that in all areas the legislature intended that publications would occur in newspapers which were first issued for distribution or circulation in the community involved, or, if no such newspaper existed, one which was issued for distribution in the county.

In reaching our conclusion we have placed primary emphasis upon the statutory provisions. We have, however, examined all of the cases cited by the parties and find that none of them, including *People ex rel. City of Chicago Heights v. Richton* (1969), 43 Ill. 2d 267, 253 N.E.2d 403, is dispositive of the proper interpretation of the Savings and Loan Act. For instance, the *Chicago Heights* case involved the requirements of the election code and specifically rejected the argument that printing within the city was synonymous with publication. In addition to involving a separate statute, the *Chicago Heights* case apparently did not involve any type of recent legislative amendments such as are involved herein. For these reasons we do not deem that case dispositive of what constitutes proper publication under the Savings and Loan Act.

We are cognizant of the recent case from the First District (*Second Federal Savings & Loan Association v. Home Savings & Loan Association*

(1978), 60 Ill. App. 3d 248, 376 N.E.2d 349) which arrives at a different decision. The court there held that publication in a Chicago newspaper satisfied the statutory requirement involved herein. We disagree with the reasoning and decision therein.

■■ In view of our determination that the proper interpretation of the word "published" in the Savings and Loan Act means a newspaper first issued for distribution or circulation in the community involved, the question before this court, therefore, becomes whether the newspapers named by the Commissioner fulfill that requirement. Our conclusion, therefore, is that both under the pertinent provisions of the notices act (Ill. Rev. Stat. 1975, ch. 100, par. 5) and under the Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, pars. 710.17 and 744(h)), publication must be made in newspapers actually published and circulated within the county or counties involved. Publication in metropolitian newspapers published in the city of Chicago but which have general circulation within the counties enumerated by the Commissioner is not sufficient.

The decision of the trial court is affirmed.

Affirmed.

RECHENMACHER and WOODWARD, JJ., concur.