(No. 50936.-

NORTH SHORE SAVINGS AND LOAN ASSOCIATION *et al.,* Appellees, v. TIMOTHY E. GRIFFIN, Commissioner of Savings and Loan Associations, *et al.*—(Timothy E. Griffin, Appellant.)

*Opinion filed March 20, 1979.*

MORAN, J., took no part.

William J. Scott, Attorney General, of Springfield (Jerome J. Webb, Assistant Attorney General, of Chicago, of counsel), for appellant.

Kenneth J. Glick, of Overholser, Ray, Flannery & Glick, Ltd., of Libertyville, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

In May 1976, defendant First Financial Savings and

Loan Association (hereinafter First Financial) filed an application with defendant Timothy E. Griffin, Commissioner of Savings and Loan Associations for the State of Illinois (hereinafter Commissioner), seeking permission to relocate its business office from Downers Grove to Waukegan. Notice of First Financial's application for relocation was published in the May 26, 1976, edition of the Chicago Daily News. Plaintiffs, two savings and loan associations with offices in Waukegan, filed written objections to the proposed relocation with the Commissioner. Following proceedings before a hearing officer for the Commissioner, First Financial's application was formally approved on December 15, 1976.

Plaintiffs filed this action in the Lake County circuit court seeking administrative review of the Commissioner's decision. The trial court, in response to plaintiff's motion for summary reversal, held that First Financial had not given proper notice of its application for relocation. The court vacated the decision of the Commissioner and remanded the matter with instructions to conduct new hearings following proper notice. The appellate court affirmed. (60 Ill. App. 3d 313.) We granted the Commissioner's petition for leave to appeal.

The Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 701 *et seq.*) provides explicitly for publication of notice where a savings and loan association contemplates relocation of its business office:

> "If a by-law amendment provides for a change in the location of an association's business office or the establishment of an additional office, the Commissioner shall not approve the amendment unless he finds that *** (4) notice of the association's proposal to establish a new office has been published at least once both in the community of the proposed new location and in the community of the present location; ***." (Ill. Rev. Stat. 1975, ch. 32, par. 744(h).)

Section 1–10.17 of the Act defines "published" as

follows:

> "printed in the American language in a newspaper of general circulation published in the community in which the association's business office is located, or if no such newspaper exists in that community, then in the county in which such business office is located." Ill. Rev. Stat. 1975, ch. 32, par. 710.17.

The notice requirement of the Illinois Savings and Loan Act is virtually identical to the general statutory notice provision in section 5 of "An Act to revise the law in relation to notices" (Ill. Rev. Stat. 1975, ch. 100, par. 5), which provides:

> "When any notice is required by law or contract to be published in a newspaper (unless otherwise expressly provided in the contract), it shall be intended to be in a secular newspaper of general circulation, published in the city, town or county, or some newspaper specially authorized by law to publish legal notices, in the city, town, or county."

Although both the trial court and the appellate court relied on this general notice provision, we think it more appropriate to base a decision on an interpretation of the Illinois Savings and Loan Act notice provision, which is more directly at issue.

The primary question which must be addressed by this court is whether the notice that First Financial placed in the Chicago Daily News satisfies the requirements set forth in the Illinois Savings and Loan Act. Resolution of this issue will turn upon our interpretation of the phrase "a newspaper of general circulation published in the community ***" found in section 1–10.17 of the Act (Ill. Rev. Stat. 1975, ch. 32, par. 710.17). In *Polzin v. Rand, McNally & Co.* (1911), 250 Ill. 561, this court defined a newspaper of general circulation as one which "circulates among all classes and is not confined to a particular class or calling in the community." (250 Ill. 561, 575.) Therefore, the more precise issue confronting us is the

meaning of the phrase "published in the community" within the context of the Illinois Savings and Loan Act.

On April 7, 1976, the Commissioner advised all Illinois savings and loan associations "that notice published in any of the three Chicago daily newspapers (Tribune, Sun-Times or Daily News) is appropriate for relocation of facility sites located in the Chicago SMSA [consisting of Cook, Will, Du Page, Kane, McHenry and Lake counties]." While an administrative interpretation is often helpful in determining legislative intent (*Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-45), it obviously is not binding if erroneous (*Martin Oil Service, Inc. v. Department of Revenue* (1971), 49 Ill. 2d 260, 269). Based on our recent interpretation of a similar statutory notice provision in *Garcia v. Tully* (1978), 72 Ill. 2d 1, we believe the Commissioner's statutory construction was erroneous.

*Garcia* is the most recent in a series of cases decided by this court dealing with the proper interpretation of the statutory language "a newspaper of general circulation published" in the community, city, district, etc. Prior to *Garcia* there was not total unanimity regarding the precise nature of this notice requirement, which is found in several Illinois statutes. (Compare *Polzin v. Rand, McNally & Co.* (1911), 250 Ill. 561, and *People ex rel. O'Connell v. Read* (1912), 256 Ill. 408, with *People ex rel. City of Chicago Heights v. Richton* (1969), 43 Ill. 2d 267, and *Perkins v. Board of County Commissioners* (1916), 271 Ill. 449.) In. *Garcia,* we considered the publication requirement of section 104 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 585), which provides, in part, that township tax-assessment lists shall be published in a newspaper of general circulation published in the township. Relying on *Polzin* and *O'Connell* we held that "simultaneous circulation of [defendant's] newspapers in the townships involved does not serve to make them newspapers published within the township within the

contemplation of section 104." (72 Ill. 2d 1, 14.) In reaching this decision, the court quoted from *Polzin*:

"If it had been intended that publication in a newspaper of 'general circulation' in the district should be a compliance with the law, the legislature would not have required that the publication be made not only in a newspaper of general circulation in the district, but also in a newspaper 'published' in the district. By the word 'published' is clearly meant the place where the newspaper is first issued or printed, to be sent out by mail or otherwise." 72 Ill. 2d 1, 13.

The reasoning of *Garcia, Polzin* and *Read* is equally applicable to the present case. The legislature obviously used the words "published in the community" to limit the phrase "a newspaper of general circulation." A decision to relocate a savings and loan association office will directly affect the residents of the involved communities. Only if they receive notice of the proposed relocation, however, will they be able to express their views to the Commissioner. It is our belief that the legislature intended the notice to occur on as local a level as possible so as to increase the likelihood that local residents would become informed of the proposed action.

Furthermore, the statutory provision in section 1–10.17 of the Act that provides for publication in the county if there is no newspaper of general circulation published in the community makes little sense if we accept the Commissioner's argument that publish means "make known," since, presumably, at least one newspaper of general circulation is "made known" in every community in the State. Also, the Commissioner's interpretation of the statute would permit a savings and loan association to place a notice in a Chicago newspaper, which has a general circulation throughout the State, to notify residents of downstate communities of a proposed relocation. It is

unlikely that the legislature intended such a result.

Accordingly, we hold that the requirement in the Illinois Savings and Loan Act that an association's proposal to relocate its business office be printed in "a newspaper of general circulation published in the community" of the proposed new location and in the community of the present location requires placement of the notice in newspapers first issued or printed for distribution in the communities or counties involved. Therefore, under the facts of the present case, in order to constitute valid notice, there must be publication in newspapers first printed or issued for distribution in Downers Grove and Waukegan unless there are none, in which event publication would have to be in newspapers first printed or issued for distribution in the counties (Du Page and Lake) involved.

Finally, the Commissioner argues that there is an absence of evidence in the record concerning the place of first issuance of the Chicago Daily News and that without such evidence there was no basis for the decisions of the trial and appellate courts. We find no merit in this argument. The certificate of publication, which is a part of the record in this case, states that the Chicago Daily News is "a newspaper published in the City of Chicago, County of Cook and State of Illinois ***." This certificate, signed by an authorized agent of the Chicago Daily News and duly notarized, clearly establishes Chicago as the place of first issuance of the newspaper. We believe that there was an adequate factual basis in the record to support the conclusions of the trial and appellate courts concerning the publication situs of the Chicago Daily News.

Having determined that the Chicago Daily News was first printed or issued for distribution in Chicago, we conclude that notice published therein does not satisfy the requirements of the Illinois Savings and Loan Act where an association proposes to relocate its business office from

Downers Grove to Waukegan. In our judgment this conclusion implements the legislative intent. If we have misjudged it, the remedy rests with the legislature.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.